UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK K. TORRES,
        Plaintiff,

        v.                                CIVIL ACTION NO.
                                          11-11232-MBB

SKIL CORPORATION and
DOES 1 through 2,
        Defendants.

**MEMORANDUM AND ORDER RE:**
**MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 18)**

**June 17, 2013**

**BOWLER, U.S.M.J.**

        Pending before this court is a motion for summary judgment

(Docket Entry # 18) filed by defendant Skil Corporation

("defendant").[1]  Plaintiff Mark K. Torres ("plaintiff") opposes

the motion.


PROCEDURAL BACKGROUND

The parties' dispute arises out of an injury suffered by

plaintiff while he was using a saw allegedly manufactured by

defendant.  On April 12, 2011, plaintiff filed a complaint

---

[1]    The body of the complaint identifies defendant as "Skilcorp
(S-B power tool co.)."  (Docket Entry # 5, p. 7).  In an
affidavit, defendant represents its correct name is Robert Bosch
Tool Corporation ("Bosch").  (Docket Entry # 20-7, p. 2).

against defendant in Massachusetts Superior Court (Barnstable
County).  (Docket Entry # 5, pp. 2 & 7).  The pro se complaint
sets out "(1) liability for negligent design flaw (2) liability
for reckless failure to correct it (3) liability for injury
resulting from both [and] (4) liability for emotional distress,
lost income." (Docket Entry # 5, p. 7).  Plaintiff combines
these theories of liability in a single count (Count One) in the
body of the complaint.  (Docket Entry # 5, p. 9).  Count One
alleges "Liability for negligence in design, in failure to
redesign and for strict liability under The Restatement(second),
including 402(A), Restatement(third)of Torts: Products Liability
and also under Massachusetts General Laws for strict liability
and negligence." (Docket Entry # 5, p. 9) (punctuation in
original).  The complaint further notes a "design defect theory
of liability in his case against Skilcorp." (Docket Entry # 5,
p. 9).  Plaintiff seeks $400,000 in damages.  (Docket Entry # 5,
p. 16).

     The complaint generally refers to warning labels on
products by noting that a "designer does not escape liability
simply by warning users" (Docket Entry # 5, p. 10) but does not
include a failure to warn claim.  Plaintiff first refers to a
failure to warn claim in answers to interrogatories.  (Docket
Entry # 20-5, p. 2).  Plaintiff again references a failure to

warn claim in opposition to summary judgment.  (Docket Entry #
21, p. 3).

On July 13, 2011, defendant filed a notice of removal on
the basis of diversity jurisdiction.  (Docket Entry # 5, pp. 4 &
5).  On July 28, 2011, the case was removed to this court.
(Docket Entry # 5).

On August 13, 2012, this court set a deadline of September
24, 2012, for plaintiff to identify an expert.  (Docket Entry #
19, p. 5) (Docket Entry # 20-7, p. 2).  At a status conference
on October 4, 2012, plaintiff acknowledged he had not identified
an expert.[2]  (Docket Entry # 20-7, p. 2).

On November 16, 2012, defendant filed the summary judgment
motion as well as a memorandum in support and a Local Rule 56.1
statement of undisputed facts.  (Docket Entry ## 18, 19 & 20).
Defendant seeks summary judgment because plaintiff has no
evidence to support a finding that the saw was defective, that

---

[2]   In opposition to summary judgment, plaintiff asserts he "has
worked for over 20 years as a lifeguard and is an expert on
accidents in general."  (Docket Entry # 21, p. 2).  Plaintiff
adds he has worked as his own automobile mechanic for 35 years
which, in addition to "using manuals and tools[,] is good
practical knowledge of physics and machines."  (Docket Entry #
21, p. 6).  Plaintiff also alleges he "is fully educated with
over 200 college credits."  (Docket Entry # 21, p. 5).
Plaintiff's training, experience and education do not qualify
him to serve as an expert under Rule 702, F.R.E.  Regarding
plaintiff's lack of an expert witness, plaintiff "references the
entire chain saw industry and support engineers competent in
physics and related areas that back a centered upper handle or
ambidextrous design for power saw unlike the Skilsaw/circular
saw design."  (Docket Entry # 21, pp. 8 & 9).

there was a feasible alternative design or that the alleged defect caused his injury.  (Docket Entry # 18).

On November 29, 2012, plaintiff filed the opposition to the summary judgment motion.  (Docket Entry # 21).  Plaintiff did not submit a Local Rule 56.1 statement of material facts in response to defendant's statement.  (Docket Entry # 21).

STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007).  It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Id.

4

Facts are viewed in favor of the non-movant, i.e., plaintiff.  Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009).  "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted."  Davila, 498 F.3d at 12 (internal quotation marks, citation and ellipses omitted); accord Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary showing, nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue" with respect to each element on which he "would bear the burden of proof at trial") (internal quotation marks and citations omitted).

Defendant submits a Local Rule 56.1 statement of undisputed facts.  Uncontroverted statements of fact in the Local Rule 56.1 statement comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in Local Rule 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing Local Rule 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert); see also Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n.7 (1st Cir.

2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'").

Also, it is well settled that futility constitutes an adequate basis to deny amendment.  See Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine State Building and Construction Trade Council, AFL CIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss."  Menard v. CSX Transportation, Inc., 840 F.Supp.2d 421, 427 (D.Mass. 2012).

## FACTUAL BACKGROUND

In or around 1997, plaintiff's father purchased a Skil Model 5275 circular saw allegedly manufactured by defendant. (Docket Entry # 20-3, p. 6) (Docket Entry # 20-5, p. 3). According to Thomas Siwek ("Siwek"), defendant's expert and the Director of Product Safety at Bosch, the saw was designed and manufactured pursuant to industry standards promulgated by Underwriters Laboratories ("UL") and both the design and the construction of the saw were approved by UL. (Docket Entry # 20-2, p. 3).  UL "is a global independent safety science and testing company that inspects, tests and certifies a wide range of products." (Docket Entry # 20-2, p. 3).  Plaintiff testified

that, "Just because a model was approved doesn't mean that it's a safe model."[3]  (Docket Entry # 20-3, p. 39).

Plaintiff's father used the saw to cut pieces of wood for decks on houses.  (Docket Entry # 20-3, p. 6).  Plaintiff does not "believe there is any repairs ever done on" the saw. (Docket Entry # 20-3, p. 21).  Plaintiff does not know if any alterations were ever made to the saw but says, "I doubt it." (Docket Entry # 20-3, p. 22).  Plaintiff also does not "believe [his father] ever had safety issues with the saw, being a right handed person."  (Docket Entry # 20-3, p. 23).  Plaintiff's father never spoke to him about any complaints with the saw. (Docket Entry # 20-3, p. 23).  In answer to an interrogatory, plaintiff states that the saw is designed for right handed people and is therefore safe only for right handed people.

---

[3]   In opposing summary judgment, plaintiff argues that the saw being approved by UL is similar to women who were diagnosed with cancer despite their mothers having used FDA approved drugs. (Docket Entry # 21, p. 8).  He points out that this court found legitimate a claim involving "a group of women with cancer who claimed they got cancer from their mothers, not them, taking FDA approved drugs made by Lilly."  (Docket Entry # 21, p. 8). Plaintiff submits he "sees more of a causal nexus between his injuries and problems with the skilsaw."  (Docket Entry # 21, p. 8).  One of the differences between the Eli Lilly and Company ("Lilly") case and the case at bar is that there were experts who could and did testify on the Plaintiffs' behalf.

(Docket Entry # 20-5, Ex. 1).  Plaintiff is left handed.[4]
(Docket Entry # 20-5, Ex. 1).

On April 14, 2008, plaintiff was trying to install a piece
of wood as floorboard to his motor boat.  (Docket Entry # 20-3,
p. 7).  This was plaintiff's first time using the saw and he was
cutting a piece of wood into a "parabola shape."  (Docket Entry
# 20-3, pp. 7 & 20).  Plaintiff operated the saw with his left
hand and secured the piece of wood, which was resting on top of
two makeshift supports, with his right hand.  (Docket Entry #
20-3, pp. 9 & 10).

According to Siwek, the saw is equipped with "two blade
guards[5] – an upper and a lower – that together cover the blade
when the tool is not powered and engaged in the cutting

---

[4]   Plaintiff alleges that the warning label on the saw was, in
addition to being inadequate, invisible to left handed users.
(Docket Entry # 21, pp. 3 & 9).  The warning label is located on
a nameplate on the saw.  (Docket Entry # 20-2, p. 4).  The label
reads, "DANGER Keep hands and body away from and to the side of
the blade.  Contact with blade will result in serious injury."
(Docket Entry # 20-2, p. 10).  The label continues, "To reduce
the risk of injury, user must read and understand instruction
manual.  Check lower guard, it must close instantly.  Hold saw
with both hands.  Support and clamp work.  Wear eye protection.
If blade binds, saw may kick back.  Use Vari-torque clutch to
protect against kickback."  (Docket Entry # 20-2, pp. 5, 10 &
14).

[5]   Plaintiff asserts there is one blade guard.  (Docket  Entry #
21, p. 1).  The bottom action of the blade guard is at issue in
this case.  (Docket  Entry # 21, p. 1).

process." (Docket Entry # 20-2, pp. 3 & 4). Plaintiff was "overjoyed" upon completing the necessary cuts and was ready to "drop the saw" because he was so tired but noticed that the blade guard "didn't snap down like it was supposed to." (Docket Entry # 20-3, p. 14). Plaintiff's left arm was "just too tired" for plaintiff to wait for the saw to stop rotating. (Docket Entry # 20-3, p. 15).

Siwek avers that the blade stops spinning approximately seven to ten seconds after the user releases the trigger switch. (Docket Entry # 20-2, p. 4). The trigger switch powers the saw.[6] (Docket Entry # 20-2, p. 4). Aware of the danger of dropping the saw without the blade guard down,[7] plaintiff tried to "flick"

---

[6]   In opposition to summary judgment, plaintiff alleges that the saw's ten second spinning time after the trigger switch was released was a defect. (Docket Entry # 21, p. 2). Plaintiff continues, "With a kill switch to stop the blade plaintiff could drop saw immediately and safely." (Docket Entry # 21, p. 4). Plaintiff alleges the time it took the blade to stop spinning "made the kill switch a necessity; yet it wasn't there on this Skilsaw." (Docket Entry # 21, p. 5). Plaintiff further explains that, "A kill switch button would be much more feasible technology than currently available Saw Stop which Bosch declines to use." (Docket Entry # 21, p. 5). Plaintiff adds that, "'Saw Stop' technology now stops the blade instantly when it contacts the finger." (Docket Entry # 21, pp. 4 & 5). Plaintiff also argues that, "The lack of 'Blade Break' safety device that was required by UL experts combined with a failing blade guard made injury likely." (Docket Entry # 20-5, p. 3).

[7]   Plaintiff stated in his deposition that, "It was a cement floor but had a rug covering it, so I was thinking, if I just drop it, because I know my arm is very tired, if I just drop it and it hits that rug, it's going to go flying on my feet, who knows what it's going to do." (Docket Entry # 20-3, p. 14).

the guard down with a finger on his right hand.  (Docket Entry # 20-3, pp. 14 & 15) (Docket Entry # 20-5, Ex. 1).  Plaintiff overshot the guard, however, and his fingers were pulled into the blade.  (Docket Entry # 20-3, p. 15) (Docket Entry # 20-5, Ex. 1).  Plaintiff's ring finger was "permanently severed halfway."  (Docket Entry # 20-5, Ex. 1).  Plaintiff's "middle finger was amputated almost fully at the tip and cut up and mangled."  (Docket Entry # 20-5, Ex. 1).  Plaintiff's middle finger lacks "full normal use" due to scar tissue.  (Docket Entry # 20-5, Ex. 1).

Plaintiff is not an engineer and has never worked for a power tool manufacturer or designed a circular saw.  (Docket Entry # 20-3, pp. 3 & 4).  He read "in one of those cases" that sawdust accumulating and thereby hampering the functioning of the blade guard in similar saws is "a common thing."  (Docket Entry # 20-3, p. 17).  Plaintiff stated that an accumulation of sawdust "probably affected" the saw's blade guard but continued, "I don't know for sure."[8]  (Docket Entry # 20-3, pp. 16 & 17).

---

[8]   Neither 'conclusory allegations, improbable inferences, and unsupported speculation,' nor 'brash conjecture coupled with earnest hope that something concrete will materialize is sufficient to block summary judgment.'"  J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996) (internal brackets omitted).

Plaintiff testified that after the accident, "There was sawdust everywhere." (Docket Entry # 20-3, p. 16).

Plaintiff testified that, "I think in my mind, I think sawdust, alone, should not disable . . . a blade guard." (Docket Entry # 20-3, p. 17). Plaintiff continued, "[The saw] should be strong enough to handle" sawdust buildup. (Docket Entry # 20-3, p. 17). He testified that, "Sawdust alone, I don't think would prevent it from coming down, then, again, I could be wrong, I'm not an expert." (Docket Entry # 20-3, p. 30). Plaintiff also stated, however, "Who's to say how much of the blame goes on the sawdust and how much of it goes on the blade guard, if it was defective, I don't know." (Docket Entry # 20-3, p. 16).

Siwek tested and inspected the blade guard. (Docket Entry # 20-2, p. 4). In an affidavit, Siwek concludes that the blade guard showed no evidence of any defect or weakening. (Docket Entry # 20-2, p. 4).

As stated in his deposition, plaintiff is "assuming" the blade guard was on "some sort of mechanical spring" and testified that, "If [the spring] weakened over time, perhaps that is an explanation, I don't really know." (Docket Entry # 20-3, pp. 17 & 18). Plaintiff also testified that, "It may not be the spring, it may be some other mechanism on there . . .." (Docket Entry # 20-3, p. 30). Plaintiff has not, nor has anyone

else on plaintiff's behalf, tested or inspected the spring. (Docket Entry # 20-3, p. 18).

In addition to the blade guard, Siwek tested and inspected the spring. (Docket Entry # 20-2, p. 4). Siwek likewise concludes that the spring showed no evidence of defect or weakening. (Docket Entry # 20-2, p. 4).

Plaintiff additionally testified that, "[The saw] seems to be strong enough now to do its job." (Docket Entry # 20-3, p. 20). Plaintiff, however, also testified that, "I'm not sure if [the saw is] stronger than the Black & Decker, it may not be, but I thought the Black & Decker was stronger." (Docket Entry # 20-3, p. 20). Plaintiff continued, "It's just all conjecture." (Docket Entry # 20-3, p. 20).

In his deposition, plaintiff opined that, "Something on the saw was defective, in my mind, for it not to be strong enough." (Docket Entry # 20-3, p. 31). Plaintiff elaborated that, "Whatever it was is beyond my expertise, but in my opinion, which is not too far off from objective, is that the saw did not work properly with the blade guard, being able to come down the way it should have." (Docket Entry # 20-3, p. 31).


## DISCUSSION

As previously noted, the complaint sets out the following four theories of liability: "(1) liability for negligent design

flaw[;] (2) liability for reckless failure to correct it[;] (3) liability for injury resulting from both[; and] (4) liability for emotional distress, lost income." (Docket Entry # 5, p. 7). The body of the complaint further denotes these theories as, "Liability for negligence in design, [a] failure to redesign[,]" strict liability under the Restatement (Second) of Torts § 402A ("section 402A") and Massachusetts law "for strict liability and negligence." (Docket Entry # 5, p. 9). The complaint also identifies a "design defect theory." (Docket Entry # 5, p. 9).

"In order to succeed on a claim of negligence at trial, [plaintiffs] [are] required to establish that (1) [defendant] owed them a duty of care, (2) [defendant] breached that duty, and (3) [defendant's] breach of the duty caused injury to the [plaintiffs]." Hochen v. Bobst Group, Inc., 290 F.3d 446, 451 (1st Cir. 2002). In a product liability action claiming negligence, there must be evidence that a defect in the product caused the injury and that the defect was present at the time the product was sold. Enrich v. Windmere Corp., 616 N.E.2d 1081, 1084 (Mass. 1993). "The presence of such a defect cannot be inferred in the absence of expert testimony." Id.

With respect to the strict liability claim under section 402A, "There is no 'strict liability in tort' apart from liability for breach of warranty . . . ." Swartz v. General Motors Corp., 378 N.E.2d 61, 62 (Mass. 1978); see Hatch v. Trail

King Industries, Inc., 656 F.3d 59, 67 (1st Cir. 2011) (section 402A "recognizes strict liability in tort, under a warranty theory").  Massachusetts "warranty liability is 'a remedy intended to be fully as comprehensive as the strict liability theory of recovery of many other jurisdictions.'"  Osorio v. One World Technologies Inc., 659 F.3d 81, 84 (1st Cir. 2011) (internal brackets omitted).  Massachusetts warranty law is therefore "'congruent in nearly all respects with the principles expressed in the Restatement (Second) of Torts § 402A.'"  Id. at 85 (quoting Back v. Wickes Corp., 378 N.E.2d 964, 969 (Mass. 1978)).  Because the strict liability claim is synonymous with warranty law, the claims in the complaint reduce to a design defect claim and a breach of warranty claim.

"In claims for both negligent design and warranty liability, the plaintiff must come forward with competent expert testimony that a defect in the product, present at the time it was sold, caused his injuries."  Chartier v. Brabender Technologie, Inc., 2011 WL 4732940, at *9 (D.Mass. Oct. 5, 2011); see also Enrich v. Windmere Corp., 616 N.E.2d at 1084.  "Expert testimony (save in rare situations not applicable here) is required to support a claim of a design defect."  See Public Service Mut. Ins. v. Empire Comfort Systems, Inc., 573 F.Supp.2d 372, 380 (D.Mass. 2008) (citing Enrich v. Windmere Corp., 616 N.E.2d at 1084).

The relevant inquiry is whether "the jury could have found, of its own knowledge, that the defendant had improperly designed [the product]." <u>Goffredo v. Mercedes-Benz Truck Co., Inc.</u>, 520 N.E.2d 1315, 1318 (Mass. 1988).  Therefore, "in a products liability case of any sophistication, a plaintiff's failure to support her claims of a design defect with expert testimony is almost always fatal." <u>Haughton v. Hill Labs., Inc.</u>, 2007 WL 2484889, at *3 (D.Mass. Aug. 30, 2007).  Moreover, as noted in <u>Enrich</u>, opinions of nonexperts are not a substitute where, as here, expert testimony is required.  <u>Enrich v. Windmere Corp.</u>, 616 N.E.2d at 1084 ("opinion of the nonexperts who testified at trial cannot substitute for [the] absence of expert testimony").

For example, expert testimony is required for a plaintiff to show a design defect in an electrical fan even when the fan was the source of the fire.  See <u>Id.</u> (parenthetical summarizing <u>Enrich v. Windmere Corp.</u>, 616 N.E.2d at 1084); <u>accord</u> <u>Stuart v. Atlantic Track & Turnout Co.</u>, 2007 WL 738689, at *1 (Mass.Dist.Ct. Jan. 25, 2007) (defective product liability claims require expert testimony if "they involve complicated engineering considerations").  In contrast, expert testimony was not required to show "that a newly laid vinyl floor that immediately began to bubble and split was the product of faulty workmanship and/or materials supplied by those who prepared the

surface or laid the tile." _Berkshire Medical Center, Inc. v._
_U.W. Marx, Inc._, 644 F.3d 71, 78 (1st Cir. 2011).

In more factually analogous cases, "it is within the
knowledge of a jury whether unshielded metal protrusions on the
handle bar of a snowmobile constitute a defect in design which
creates an unreasonable risk of harm." _Smith v Ariens Co._, 377
N.E.2d 954, 957-58 (Mass. 1978).  "The evidence presented to the
jury, including the existence and placement of the protrusions
and the absence of guards to cover them, was sufficient to allow
the jury to determine whether the snowmobile was negligently
designed." _Id._ at 958.  Conversely, an industrial feeder with a
bolted, stainless-steel, fixed barrier guard – designed to
prevent operators' body parts from being inserted into the
feeder – involves considerations beyond the common knowledge of
a layperson and requires an expert to speak to the presence of a
defect.  _Chartier v. Brabender Technologie, Inc._, 2011 WL
4732940, at *11.  "None of this information is within knowledge
of a layperson." _Id._

Here, the mechanics of the saw's blade guard more closely
analogize to those of a feeder's barrier guard than to those of
sharp metal protrusions on a snowmobile's handle bars.
Moreover, important to the finding that the protrusions on the
snowmobile's handle bars were within the common knowledge of a
layperson was the absence of any guard to cover the protrusions

as opposed to the potential malfunctioning of an existing barrier guard.  Smith v Ariens Co., 377 N.E.2d at 958.  Here, the saw's blade guards existed to protect users from the spinning blade.  A defect due to the absence of any additional safety feature, such as a kill switch, is not similar to handle bars with metal protrusions which were not equipped with a guard of any kind.  Further, the 11 year old saw allegedly causing plaintiff to injure his hand more closely parallels a fan allegedly catching fire than that of a brand new vinyl floor immediately bubbling after installation.  Therefore, plaintiff needs expert testimony to speak to the existence of a design defect on the saw's blade guard.

Moreover, UL approved the saw's design.  When UL standards are *not* met "[t]he jury [is] justified in concluding that the [product] had been negligently designed at the time of sale." Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 13 (1st Cir. 2001).  Similarly, evidence of a defective design may consist of "the refusal of UL to list the product."  Moulton v. Rival Co., 116 F.3d 22, 26 (1st Cir. 1997).  Here, Siwek testified to the fact that the saw was designed and manufactured pursuant to UL standards and UL approved the saw.

Meeting industry standards, however, does not eliminate the possibility that a product contains a design defect.  "If the defendants want to show that they met a prevailing industry

standard, fine; but this should not preclude a plaintiff from showing that industry should have done more under certain conditions." Wilson v. Bradlees of New England, 96 F.3d 552, 557 (1st Cir. 1996).  "Conformity to standard practice is not dispositive, of course, and counsel may argue that industry standards can and should be more stringent." Back v. Wickes Corp., 378 N.E.2d at 970.  However, when a saw meets UL standards and a defendant's *expert* is unfamiliar with those standards, "this cast[s] doubt upon the thoroughness of [the expert's] investigation of the saw and upon the extent of his general knowledge of the design and manufacture . . .." McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981).

Here, plaintiff testified, "Just because a model was approved doesn't mean that it's a safe model." (Docket Entry # 20-3, p. 39).  Plaintiff alleges the saw's being approved is similar to mothers taking FDA approved drugs which daughters "claimed they got cancer from." (Docket Entry # 21, p. 8). Plaintiff also argues that he "sees more of a causal nexus between his injuries and problems with the skilsaw" than between the drugs approved by the FDA and cancer developing in the daughters of mothers who took the drugs. (Docket Entry # 21, p. 8).  Such allegations and testimony, however, do not address how the circular saw industry could have and should have been more stringent to ensure a safer blade guard design and manufacture.

Such allegations and testimony also do not display that plaintiff, who is not an expert, has an extensive enough knowledge of the design and manufacture of the saw to keep doubt from being cast upon his own testimony.  Although the saw's meeting UL standards is not always dispositive of the absence of a design defect, where, as here, plaintiff fails to rebut or attack the finding with adequate expert testimony, it provides sufficient evidence for a jury to find in defendant's favor. See McKinnon v. Skil Corp., 638 F.2d at 277; see also Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d at 13; see also Moulton v. Rival Co., 116 F.3d at 26.

Expert testimony in plaintiff's favor is therefore lacking as to the existence of a defect at the time of sale and causation.  "[A] causation finding on speculation or conjecture . . . is inappropriate under Massachusetts law." Santiago v. Sherwin Williams Co., 3 F.3d 546, 552 (1st Cir. 1993).  "Where there is no evidence from which the factfinder, without speculating, can find causation, however, the case is appropriately kept from the jury." Id.  "An expert opinion, stated in terms of possibilities, does not satisfy the plaintiff's burden of proof, namely, to establish by a preponderance of the evidence the existence of a design defect which caused the plaintiff's injuries." Goffredo v. Mercedes-Benz Truck Co., Inc., 520 N.E.2d at 1318.

Rather than provide expert testimony plaintiff, who is not an expert,[9] testified, "Who's to say how much of the blame goes on the sawdust and how much of it goes on the blade guard, if it was defective, I don't know."  (Docket Entry # 20-3, p. 16). Plaintiff continues, "Whatever it was is beyond my expertise, but in my opinion, which is not too far off from objective, is that the saw did not work properly with the blade guard . . .." (Docket Entry # 20-3, p. 31).  Plaintiff's beliefs and statements based on speculation and conjecture fall short of providing sufficient evidence of a genuine dispute of fact needed for a reasonable jury to find in plaintiff's favor.  See American Steel Erectors, 536 F.3d at 75.

Plaintiff also fails to sufficiently establish that a safer, feasible alternative design for the blade guard exists. "An essential element of such a design flaw claim is that there be a safer alternative design."  Gillepsie v. Sears, Roebuck & Co., 386 F.3d 21, 26 (1st Cir. 2004).  "There is a case for the jury if the plaintiff can show an available design modification which would reduce the risk without undue cost or interference with the performance of the machinery."  Uloth v. City Tank Corp., 384 N.E.2d 1188, 1193 (Mass. 1978) (emphasis added). Conversely, when a "[plaintiff] has offered no expert testimony regarding any identifiable defect . . . or any alternative safer

---

[9]   See footnote two.

design . . . the claim fails as a matter of law." Public
Service Mut. Ins. v. Empire Comfort Systems, Inc., 573 F.Supp.2d
372 at 380.  It is true that Smith "suggests that Massachusetts
product liability law may tolerate a finding of design defect
even in the absence of evidence supporting the existence of a
feasible alternative design." Osorio v. One World Technologies
Inc., 659 F.3d at 87 (citing Smith v Ariens Co., 377 N.E.2d at
957).  The plaintiff in Smith, however, presented evidence to
the jury about a design defect for which exert testimony was not
required in the first place.  Id. at 958.  Plaintiff, as
previously discussed, is not able to do so in this case.

Moreover, plaintiff proposes the feasibility of an
alternative, safer design for the saw by merely discussing the
differing characteristics of similar saws and the alleged
feasibility of a kill switch on the saw.  Plaintiff testified,
"I'm not sure if [the saw is] stronger than the Black & Decker,
it may not be, but I thought the Black & Decker was stronger."
(Docket Entry # 20-3, p. 20).  Plaintiff added, "It's just all
conjecture."  (Docket Entry # 20-3, p. 20).  Plaintiff also
alleges that the Black & Decker saw is "smaller and lighter than
the Skil and easier to suspend or hold for extended periods if
the guard were to fail to cover blade."  (Docket Entry # 21, p.
7).  Plaintiff then adds that, "A [chainsaw] styled circular saw
with the centered top hold is a safer design that's well known

21

to the public." (Docket Entry # 21, p. 7). Finally, plaintiff alleges a kill switch which would stop the spinning blade is "much more feasible technology" than the currently available "Saw Stop" method which stops the blade upon contact with a finger. (Docket Entry # 21, pp. 4 & 5). Such allegations and speculative opinions are not based on sufficient facts or data and are not the product of reliable principles and methods. See F.R.E. 702. Plaintiff is also not an expert. Accordingly, these allegations and statements are not sufficient to allow a jury to find that a safer alternative design exists.

Plaintiff relies heavily on Cavanaugh v. Skil Corp., 751 A.2d 518 (N.J. 2000), a case in which a portable circular saw ran over the foot of the plaintiff. No expert testimony was required in Cavanaugh. Plaintiff overlooks that Cavanaugh was decided by the New Jersey Supreme Court under New Jersey state law as opposed to the Massachusetts state law that applies in this case.

In sum, the mechanical components of the saw's blade guard are beyond the common knowledge of a layperson. Expert testimony about the existence of a design defect and causation is therefore required. Plaintiff provides no such expert testimony. Plaintiff, who is not an expert, merely speculates about the potential presence of a design defect which caused his injury. Plaintiff also only speculates as to the possible

existence of a reasonable, feasible alternative design for the
saw.  Such speculation by a nonexpert, in light of the fact that
the subject matter is beyond the common knowledge of a
layperson, is not sufficient to withstand defendant's summary
judgment motion.

As a final matter, in seeking summary judgment defendant
addresses an alleged failure to warn claim.  Defendant submits
there is no such claim and, even if plaintiff raised such a
claim, it would not withstand summary judgment.  (Docket Entry #
19, § IV).  Although plaintiff is proceeding pro se, the
complaint does not set out a failure to warn claim.  Rather, in
answering interrogatories, plaintiff refers to defendant's
failure to warn "lefty users" of the saw.  (Docket Entry # 20-5)
("[t]here was a failure to warn by defendant resulting in
liabilities").

Because the complaint does not include a failure to warn
claim, it is improper to allow summary judgment on such a claim.
Fact discovery is closed and the deadline to file dispositive
motions has passed.  Because plaintiff is proceeding pro se,
this court will allow him 30 days to file a motion for leave to
file an amended complaint solely to raise a failure to warn
claim.  Plaintiff must file a copy of the proposed amended
complaint as an exhibit to the motion.  The proposed amended
complaint shall be limited to a failure to warn claim.  The

proposed amended complaint shall not refer to or raise a design or manufacturing defect or negligence claim or any other cause of action except for the failure to warn claim.

## CONCLUSION

In accordance with the foregoing discussion, the motion for summary judgment (Docket Entry # 18) is **ALLOWED**.  Plaintiff is afforded 30 days to file a motion for leave to amend the complaint to include a failure to warn claim.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
Unites States Magistrate Judge